THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ANONYMOUS, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Ninth District, December 23, 1936.

*W. F. X. Geoghan, District Attorney [Edward H. Levine* and *Samuel A. Pease, Assistant District Attorneys]*, for the plaintiff.

*Jacob R. Rosenthal*, for the defendant.

RUDICH, C. M. The defendant, a male person, is charged with vagrancy under clause (f) of subdivision 4 of section 887 of the Code of Criminal Procedure. The proof clearly establishes the fact that on December 3, 1936, the defendant committed an act of sexual intercourse with a prostitute, for which he paid her the sum of one dollar. Both were arrested in the house where the act was committed. Before the trial of this defendant the woman was arraigned in Women's Court, and she there pleaded guilty to the charge. The defendant here did not take the stand to deny the testimony against him, but he moves for a dismissal of this proceeding and for his discharge on the ground that upon the conceded facts a male person cannot be convicted of violating this law.

That part of the statute which is material to this question reads as follows:

" § 887. Who are vagrants. The following persons are vagrants: * * * 4. A person (a) who offers to commit prostitution, or (b) who offers or offers to secure another for the purpose of prostitution, or for any other lewd or indecent act; or (c) who loiters in or near any thoroughfare or public or private place for the purpose of inducing, enticing or procuring another to commit lewdness, fornication, unlawful sexual intercourse or any other indecent act; or (d) who in any manner induces, entices or procures a person who is in any thoroughfare or public or private place, to commit any such acts; or (e) who receives or offers or agrees to receive any person into any place, structure, house, building or conveyance for the purpose of prostitution, lewdness or assignation * * *, or (f) who in any way aids or abets or participates in the doing of any of the acts or things enumerated in subdivision four of section eight hundred and eighty-seven of the Code of Criminal Procedure."

Diligent search has failed to reveal in this State any reported case in which this question was squarely presented. In *People* v. *Edwards* (180 N. Y. Supp. 631), decided by Judge WADHAMS in the Court of General Sessions in 1920, the point was discussed, but only by way of *obiter dicta*. There the woman was the defendant. What the learned judge there said concerning the subject, though not necessary for the decision of the case before him, deserves being quoted here. In reversing the conviction of the

woman, partly because the man was not brought in as a witness at her trial, he says:

" Under subdivision 4 of section 887 it will be noticed that the word ' person ' is used in the various definitions of vagrancy as ' a person who offers to commit prostitution,' or the other acts enumerated, and it is a ' person ' who in any way aids or abets or participates that is in like manner included in the definition of vagrancy. The word as so used includes men, as well as women. Therefore a man who induces, entices or procures a woman to commit prostitution, either with himself or with another, is a vagrant, and the man who aids or abets or participates in the commission of prostitution by a woman is a vagrant, and in either case is equally guilty as the woman. It is therefore the duty of the police to arrest the men who are found participating in the offense and to hold them for trial.

" The court is aware that it has been the custom heretofore followed to arrest the women and let the men go; but the time has come when the custom cannot longer be permitted to continue. * * * The practical application of the law as heretofore enforced is an unjust discrimination against women in the matter of an offense which, in its very nature, if completed, requires the participation of men."

However, as stated above, these remarks of the learned judge, though vigorous and pointed, were *obiter dicta* and are, therefore, not binding upon me, and, since no other authorities in this State can be found, I prefer to treat the question as a new one.

An analysis of subdivision 4, with its component clauses, will be helpful. It will be noted that clause (a) refers to the prostitute who merely offers to commit prostitution; clause (b) refers to the procurer, male or female; clause (c) refers to the prostitute and to the male or female pervert who loiters about for an indecent purpose — the mere loitering being an offense if the purpose be proved; clause (d) refers to the prostitute and to the pervert who actually induces another person to do one of the prohibited acts, without any loitering; clause (e) refers to the madame or keeper of the house of assignation. Comprehensive as these clauses may seem to be, there were still some offenders who, by a strict interpretation of the law, could not be said to be included among the foregoing: the porters, the maids, the many other henchmen, assistants and lieutenants to procurers, prostitutes and madames, all aiding, abetting and participating in the business of prostitution and making their living therefrom. I hold that it was this class of persons, and not the male customer of the prostitute, that the Legislature intended to reach when it enacted clause (f).

It is argued that, in so construing the phraseology employed, this court is doing violence to the plain meaning of the word " participates." But in the interpretation of statutes dealing with prostitution, we frequently find definitions that seem somewhat unusual. In *People* v. *Rice* (277 Ill. 521; 115 N. E. 631) the highest court in that State held that the expression " inmate of a house of prostitution " did not include a man who was found therein, and who had come there for the purpose of having illicit intercourse, but applied only to the female who came there more or less regularly and who plied her trade there. In *State* v. *Gardner* (174 Iowa, 748; 156 N. W. 747) the highest court in that State was called upon recently to construe a statute which read: " If any person, for the purpose of prostitution * * * resorts to * * * any house of ill fame," etc. The court held that this language does not mean all that it says; that the words " any person " mean any *female* person and do not include a male customer. Says the learned court: " Both ' prostitute ' and ' prostitution ' have such a fixed meaning in the approved usage of the language and such peculiar and appropriate meaning in the law as that, if we give effect to such meaning, the statute in question does not contemplate that a man can be a prostitute or can practice prostitution. * * * If a man cannot commit prostitution, he cannot go to a place for the purpose of prostitution."

Even more startling is the decision of a California appellate court in the case of *People* v. *Young* (132 Cal. App. 770; 23 P. [2d], 524, decided in 1933. There the statute under consideration read: " Any male person who, knowing a female to be a prostitute, shall live or derive support or maintenance, in whole or in part, * * * shall be guilty of a felony; to wit: pimping." The court held that, despite the opening words " any male person," a wife could be prosecuted *under that law* for helping her husband in the business of pimping.

These authorities, which I have briefly discussed here, represent about all the reported cases touching on this subject in the United States in the past fifty years.

Coming back to our own statute, we find that clause (f), which refers to those who aid, abet or participate, was added to the statute books in 1919. In trying to arrive at the intent of the Legislature in phrasing the law in the way it did, it is not necessary to go very deeply into the highly controversial questions of the regulation, suppression or toleration of this apparently incurable evil, if evil it be. Nor is it necessary to follow all the shifts and turns of policy adopted in this State or elsewhere in the past. They involve no new principle; they merely represent phases in the evolution of

the more settled and more systematic procedure in force at the present time. However, a study of the history of prostitution from ancient times down to the present day leaves one with this underlying thought: Wherever suppressive or punitive measures were employed, they were directed against the female, not the male. I do not argue that this attitude was just or fair, or that a persistence in that attitude was best calculated to rid the vice of its cognate evils. Perhaps from the standpoint of our ever-changing conception of morality, and certainly in the interest of the public health, it would have been wiser to bring the male participant, as well, under some sort of governmental supervision. But here we are not confronted with a question of morals or of public health; we are called upon to construe a statute, and it is only from the strictly legalistic standpoint that we must view the subject. By the time the year 1919 rolled around, society in these environs may have been sufficiently weaned from its ostrich-like fixation on the entire topic to consider and to discuss the advisability of a change in policy so as to include the male in our treatment of the vice. But these were still only little more than voices in the wilderness; I do not believe that they had risen to such insistence and volume as to force the Legislature to pry us loose from firmly rooted ideas by enacting a revolutionary measure making him a law violator. Before believing that our law-making body intended to initiate this radical departure, before concluding that it meant to class an otherwise respectable man with those " who are vagrants," I must ask for a much clearer expression of the legislative intent, for words that will leave no room for doubt. In this more enlightened day and age, when there is strong support for the movement toward lifting the stigma of criminality from the woman, I am loath to place that stamp upon the man.

Another act which is regarded as a vice rather than as a crime is gambling and there, too, the law differentiates between participants with respect to culpability. It is now well settled that persons who bet on horse races violate no law while the bookmaker who accepts the bets may, under certain circumstances, be guilty of a misdemeanor. The same is true of policy players as contrasted with the " banker " or manager in the policy game.

The defendant is discharged.