[Crim. No. 16398. In Bank. Dec. 24, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN OTTO SCHUEREN, Defendant and Appellant.

554

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Don R. Ellertson, David A. Sanders and Dennis A. Fischer, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Frederick R. Millar, Jr., Robert F. Katz and Jeffrey L. Bear, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—An information was filed charging John Schueren in a single count with "assault with a deadly weapon with intent to commit murder, a violation of Section 217, Penal Code, a felony, committed as follows: . . . Schueren . . . did . . . commit an assault with a deadly weapon upon Thomas Rutkowski . . . with the intent . . . to . . . murder . . .

Rutkowski." A jury found defendant guilty of assault with a deadly weapon (Pen. Code, § 245),[1] "a lesser and necessarily included offense," and he was sentenced to prison for "the term prescribed by law." On this appeal from the judgment defendant's sole attack is upon the sentence.[2] For the reasons hereinafter stated we have concluded that the judgment should be modified to limit the maximum term of imprisonment to not more than 14 years and that the judgment as so modified should be affirmed.

No claim is made, or properly could be, that the evidence is insufficient to support the conviction. The evidence discloses in brief that defendant stabbed Thomas Rutkowski several times with a knife during an altercation. One of the wounds penetrated Rutkowski's spleen, which was subsequently removed in surgery. Rutkowski had noticed that defendant was "feeling high" shortly before the stabbing, and defendant testified that he had "quite a bit" to drink that day. Defendant sought to establish that he acted in self-defense.

The jury, as we have seen, found defendant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), a crime necessarily included in that charged.[3] The penalty provided by Penal Code section 245, subdivision (a), for a violation of that subdivision is imprisonment in the state prison for six months to *life* or a county jail term or fine; the penalty provided by Penal Code section 217 for a violation of that section is one to *fourteen years* in prison.[4] Under the judgment, as it now reads, defendant is faced

---

[1]Although the verdict and judgment do not so specify, it is apparent that defendant's conviction is for violating subdivision (a) of Penal Code section 245. Subdivision (b) of that section involves specified assaults "upon the person of a peace officer or fireman," and the victim here was not a peace officer or fireman.

[2]On appeal defendant also initially claimed that the court erred in giving an instruction to the jury, but in his argument before this court he abandoned that claim. Furthermore, from our examination of the record we are satisfied that the giving of the instruction was not prejudicial error. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 831 [299 P.2d 243].)

[3]Penal Code section 1159 provides: "The jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged . . . ." Here assault with a deadly weapon (Pen. Code, § 245, subd. (a)) is necessarily included in the crime charged under a test based on the accusatory pleading. (*People* v. *Jennings,* 22 Cal.App.3d 945, 948, fn. 2 [99 Cal.Rptr. 739]; *People* v. *Nichelson,* 217 Cal.App.2d 273, 279 [31 Cal.Rptr. 750]; see *People* v. *Marshall,* 48 Cal.2d 394, 403-405 [309 P.2d 456].)

[4]The penalty for violating section 245 has been changed several times since the section's enactment in 1872, but before the 1970 amendment to that section the maximum term of imprisonment varied from two to ten years, absent certain circumstances not present here. (See 1872 Pen. Code; Code Am. 1873-74, ch. 614, p. 428, § 22; Stats. 1921, ch. 89, p. 86, § 1; Stats. 1933, ch. 847, p. 2216, § 1; Stats. 1961, ch. 802, p. 2067, § 1; Stats. 1965, ch. 1271, p. 3145, § 3; Stats. 1965, ch. 1985, p. 4510, § 2; Stats. 1966, First Ex. Sess., ch. 21, p. 308, § 4; Stats. 1968, ch. 1222, p. 2321,

with the possibility of life in prison, whereas, according to defendant, had he been convicted of the crime charged his maximum term of imprisonment could not have exceeded 14 years.

■ Defendant argues that the proscription in section 6, article I, of the California Constitution against "cruel or unusual punishment" precludes a sentence exceeding 14 years for a defendant charged with assault with intent to commit murder (Pen. Code, § 217) and convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) as a necessarily included offense.[5] The Attorney General argues to the contrary.

As a preliminary matter, it is necessary to consider a claim by the Attorney General that since defendant has not yet served 14 years and possibly may be released by the Adult Authority within that time, defendant's attack upon the sentence is premature. The Attorney General's claim cannot be upheld. The maximum term of a sentence affects the Adult Authority's fixing of an inmate's indefinite sentence. (See *Neal* v. *State of California,* 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839].) Moreover, a prisoner under a sentence with a maximum of life whose term has not yet been fixed by the Adult Authority is subject to at least one statutory provision that is inapplicable to a prisoner serving a lesser term. (See Pen. Code, § 4500 [assault with a deadly weapon with malice aforethought by a life prisoner]; *People* v. *Smith,* 36 Cal.2d 444, 445 [224 P.2d 719].) Thus defendant's attack upon his sentence is not premature.

Another preliminary question is whether defendant is correct that assault with intent to commit murder is the offense charged. The Attorney General argues that the "charge stated no single offense . . . but instead it stated a compound allegation of two offenses . . . ." In one count the prosecutor

§ 57; Stats. 1970, ch. 796, p. 1510, § 1.) Section 217 of the Penal Code has not been amended since the section was enacted in 1872, and there has been no change as to the maximum term for violating that section. However, in 1953 Penal Code section 18b was enacted, and under that section where a statute imposes a maximum prison term of less than 15 years, the minimum term shall be six months. According to the Attorney General, the minimum prison term for violating sections 217 and 245, subdivision (a), is thus now the same, i.e., six months.

[5]Defendant also contends that the proscription against cruel and unusual punishment in the federal Constitution (U.S. Const., 8th & 14th Amends.), the due process clauses of the federal and state Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 13), and the proscriptions against double jeopardy in the federal and state Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 13) forbid the imposition of a term exceeding 14 years for a defendant charged in the manner here appearing and convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and that even in cases where assault with a deadly weapon (Pen. Code, § 245, subd. (a)) is charged in a separate count or is the only offense charged, a life maximum term is cruel or unusual punishment under article I, section 6, of our state Constitution. In view of our disposition of the argument set forth above in the body, it is unnecessary to consider these additional contentions.

charged the elements of two kinds of aggravated assaults defined by two separate sections of the Penal Code, assault with intent to commit murder (Pen. Code, § 217) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). The pleading alleged that the act violated section 217 and made no reference to section 245. Penal Code sections 951 and 952, which specify the form and matters that must appear in an information, contain no requirement that the statute which the accused is charged with violating be designated by number, and even a reference to the wrong statute has been viewed of no consequence under the circumstances there appearing (e.g., *People* v. *Siegel,* 198 Cal.App.2d 676, 683-684 [18 Cal.Rptr. 268]; *People* v. *Jackson,* 191 Cal.App.2d 296, 302-303 [12 Cal.Rptr. 748] [cert. den. 368 U.S. 864 (7 L.Ed.2d 60, 82 S.Ct. 109)]; *People* v. *Rivers,* 188 Cal. App.2d 189, 195 [10 Cal.Rptr. 309]). However, the accusatory pleading "might well" designate by number the statute allegedly violated, although "the defect" in failing to do so may not be of substance. (*In re Bramble,* 31 Cal.2d 43, 51 [187 P.2d 411]; compare *People* v. *Severino,* 122 Cal. App.2d 172, 179 [264 P.2d 656] [overruled on another issue in *People* v. *Smith,* 44 Cal.2d 77, 80-81 (279 P.2d 33)] (wherein it is stated that there is no requirement the accusatory pleading name the statute allegedly violated).) ▪ Furthermore, reasonable doubts in determining the identity of the offense charged are to be resolved in the defendant's favor. (See *In re Tartar,* 52 Cal.2d 250, 256 [339 P.2d 553]; *In re Bramble, supra.*)

In the instant case resolving reasonable doubts in defendant's favor, it is clear that the crime charged is assault with intent to commit murder.[6] It may be noted that there is no doubt that the prosecutor regarded that offense as the crime charged since several of the instructions proposed by the prosecutor indicated that assault with intent to commit murder was the crime charged.

In support of his contention that the proscription against cruel or unusual punishment in our state Constitution precludes a sentence exceeding 14 years for a defendant charged with assault with intent to commit murder and convicted of assault with a deadly weapon as a necessarily included offense, defendant cites *Hobbs* v. *State,* 253 Ind. 195 [252 N.E.2d 498,

---

[6]*People* v. *Gonzalez,* 28 Cal.App.3d 1091 [104 Cal.Rptr. 530], wherein the indictment contained charges substantially similar to the one here involved, stated that "it must be deemed that Gonzalez at the outset was charged with the offense of assault with a deadly weapon, and the lesser included offense of assault with intent to commit murder," and that it was of no moment that the charges were described as violations of section 217—that it was the language of the charge that controls. However, *Gonzalez* made no reference to the rule regarding resolving reasonable doubts in defendant's favor. To the extent that *Gonzalez* is inconsistent with the views expressed herein it is disapproved.

499 et seq.]; *Dembowski* v. *State,* 251 Ind. 250 [240 N.E.2d 815, 816 et seq.]; and *Cannon* v. *Gladden,* 203 Ore. 629 [281 P.2d 233, 234 et seq.]. Those cases hold that sentence for a "lesser" included offense that exceeds the sentence provided for the "greater" offense constitutes cruel and unusual punishment under various constitutional provisions. (*Hobbs* v. *State, supra* [sentence for entry to commit a felony that exceeded sentence for second degree burglary]; *Dembowski* v. *State, supra* [sentence for robbery that exceeded sentence for armed robbery]; *Cannon* v. *Gladden, supra* [sentence for assault with intent to commit rape that exceeded sentence for rape].) The cited cases reasoned that under those circumstances the penalty for the "lesser" offense was unconstitutionally disproportionate to the crime.[7]

Those cases, however, differ from the present one, since there one offense was included in the other evidently under a test based on the elements of the crime. Here assault with a deadly weapon (Pen. Code, § 245, subd. (a)) is not included in assault with intent to commit murder (Pen. Code, § 217) under that test, since the latter crime does not contain as an element the use of a deadly weapon. (*People* v. *Ramos,* 25 Cal.App.3d 529, 536-538 [101 Cal.Rptr. 230]; see *People* v. *Marshall, supra,* 48 Cal.2d 394, 403-404; *People* v. *Robinson,* 6 Cal.App.3d 448, 456 [86 Cal.Rptr. 56].) Rather assault with a deadly weapon (Pen. Code, § 245, subd. (a)) is included in the crime charged (Pen. Code, § 217) under a test based on the language of the accusatory pleading. (*People* v. *Jennings, supra,* 22 Cal. App.3d 945, 948, fn. 2; *People* v. *Nichelson, supra,* 217 Cal.App.2d 273, 279; see *People* v. *Marshall, supra.*) In the instant situation the fact that the included offense carries a larger penalty than that for the crime charged is insufficient in itself to show that the penalty for the former is unconstitutionally disproportionate to the crime.

A "disproportionate" test was adopted in *In re Finley,* 1 Cal.App. 198 [81 P. 1041], as the sole method of determining whether a penalty is "unusual" within the meaning of article I, section 6, of the California Constitution. *Finley* declared (pp. 201-202) that "It is only when the punishment is out of all proportion to the offense, and is beyond question an *extraordinary penalty* for a crime of *ordinary gravity committed under ordinary circumstances,* that courts may denounce it as *unusual.*"

A "disproportionate" test continues to be recognized as one method of determining whether a penalty violates article I, section 6. *People* v. *Anderson,* 6 Cal.3d 628, 654 [100 Cal.Rptr. 152, 493 P.2d 880] [cert. den., 406 U.S. 958 (32 L.Ed.2d 344, 92 S.Ct. 2060)], indicated that "an excessive

---

[7] The ruling in *Hobbs* and *Dembowski* is not limited to the situation where the "greater" offense is charged. (*Heathe* v. *State,* 257 Ind. 345 [274 N.E.2d 697, 698-699].)

or disproportionate punishment" may be "unusual" within the meaning of that section, and *In re Lynch,* 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921], concluded that "a punishment may violate article I, section 6, of the Constitution if . . . it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."

It is evident from *People* v. *Anderson, supra,* 6 Cal.3d 628, however, that a "disproportionate" test is no longer the sole method of determining whether a penalty is "unusual" within the meaning of article I, section 6. *Anderson* concluded (pp. 653-656) that the worldwide trend toward abolition of capital punishment in civilized countries and the fact that in California today the death penalty is rarely imposed and even more rarely carried out combined to render that penalty "unusual" within the meaning of the foregoing constitutional provision.[8] *Anderson* thus gave a literal interpretation to the word "unusual."[9] Although after *Anderson* article I, section 27, of the California Constitution was adopted purporting to nullify the holding in *Anderson* as to the invalidity of the death penalty, nothing in section 27 indicates that the word "unusual" may no longer be interpreted literally.

Here had defendant pleaded guilty to the offense charged or been found guilty of that offense his prison term could not have exceeded 14 years but by asserting his constitutional rights against self-incrimination and to a jury trial and by successfully defending against the crime charged but not against an included offense, he is now faced with the possibility of life in prison. Under the circumstances we believe that a prison term exceeding 14 years is, literally, an "unusual" punishment—i.e., a punishment that in the ordinary course of events is not inflicted. It would seem indisputable that an accused is normally not subject to an increased maximum prison term as a consequence of, inter alia, exercising his constitutional rights *and* successfully defending against the crime charged.[10]

[8]Article I, section 6, of our Constitution "is not a static document." (See *People* v. *Anderson, supra,* 6 Cal.3d 628, 647.)

[9]With respect to the meaning of "unusual" in the "cruel and unusual punishment" clause of the Eighth Amendment of the federal Constitution, *Trop* v. *Dulles,* 356 U.S. 86, 101-102, footnote 32 [2 L.Ed.2d 630, 642, 78 S.Ct. 590], noted that "Whether the word 'unusual' has any qualitative meaning different from 'cruel' is not clear" and that "If the word *'unusual'* is to have any meaning apart from the word 'cruel' . . . the meaning should be the ordinary one, signifying *something different from that which is generally done.*" (Italics added.)

[10]A defendant, who rejects a plea bargain and exercises his constitutional rights against self-incrimination and to a jury trial, may, of course, receive a greater maxi-

In our opinion such a term under the circumstances is contrary to "the requirements of regularity and fairness" embodied in article I, section 6 (see *Furman* v. *Georgia,* 408 U.S. 238, 276-277 [33 L.Ed.2d 346, 370-371, 92 S.Ct. 2726] [concurring opn. by Brennan, J.]).

A statute valid on its face may be unconstitutionally applied (see, e.g., *Furman* v. *Georgia, supra,* 408 U.S. 238, 257 [33 L.Ed.2d 346, 359-360] [concurring opn. by Douglas, J.]; *Yick Wo* v. *Hopkins,* 118 U.S. 356, 373-374 [30 L.Ed. 220, 227-228]; *Gibbs* v. *Blackwell,* 354 F.2d 469, 471; *Brock* v. *Superior Court,* 12 Cal.2d 605, 610 [86 P.2d 805]; *Wade* v. *City & County of San Francisco,* 82 Cal.App.2d 337, 338-339 [186 P.2d 181]; 16 C.J.S. 353), and under the circumstances of this case a prison term exceeding 14 years for assault with a deadly weapon (Pen. Code, § 245, subd. (a)) is an unconstitutional application of the penalty provision of that section.[11]

Our decision should not handicap law enforcement. The People are still free to charge violations of sections 217 and 245 in separate counts. Should a defendant be convicted on both counts thus separately pleaded Penal Code section 654 precludes multiple punishment for a single act, and normally in order to prevent multiple punishment the lesser penalty is stayed in the manner set forth in *People* v. *Niles,* 227 Cal.App.2d 749, 754-756 [39 Cal.Rptr. 11] (see also *In re Wright,* 65 Cal.2d 650, 655-656, fn. 4 [56 Cal.Rptr. 110, 422 P.2d 998]).

Under Penal Code section 1260 this court may "reduce . . . the punishment imposed." Although no authority has been found construing the section to permit us to reduce the penalty outside the statutory scheme of penalties, we believe that the section permits us to reduce the punishment

---

mum penalty than he would have had he accepted the plea bargain. In those circumstances such a penalty cannot be said to be "unusual." The instant case, however, does not present an ordinary plea bargain situation, and here the higher term was imposed as a consequence of, inter alia, defendant's successfully defending against the crime charged.

[11]*People* v. *Jennings, supra,* 22 Cal.App.3d 945, 950, is not contrary to the conclusion reached above. The defendant in *Jennings* was charged with assault with a deadly weapon with intent to commit murder in violation of Penal Code section 217 and was convicted of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a), and he argued on appeal that "a person might suffer a higher penalty . . . for an offense lesser than that described in section 217 . . . and that this violates the provisions of the Fourteenth Amendment," and the court rejected the argument. *Jennings* did not discuss the cruel or unusual punishment clause of our state Constitution.

imposed here in order to prevent defendant's being required to serve an unconstitutional sentence.

The judgment is modified by (1) adding "subdivision (a)," after "Section 245" and (2) changing "term prsecribed by law." to "term prescribed by law, subject to the limitation that defendant's term may not exceed 14 years." The judgment, as so modified, is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**CLARK, J.**—While I concur in the majority opinion insofar as it affirms the judgment, I dissent from modifying it to provide that defendant's term may not exceed 14 years. The majority does not hold life imprisonment a *cruel* punishment for assault with a deadly weapon (Pen. Code, § 245). Nor does the majority find the punishment so disproportionate to the crime as to be *unusual*. Rather, it holds the punishment unusual as applied in the circumstances of this case simply because assault with a deadly weapon was charged as an offense included within assault with intent to commit murder (Pen. Code, § 217). I cannot agree. It is of no constitutional significance whether violation of section 245 is charged as a separate count or as an included offense.

Defining an unusual punishment as "a punishment that in the ordinary course of events is not inflicted," the majority holds life imprisonment unusual in the circumstances of this case on the ground "an accused is not normally subject to an increased maximum prison term as a consequence of, inter alia, exercising his constitutional rights *and* successfully defending against the crime charged." (*Ante,* p. 560; italics in the original.)

Characterizing the punishment imposed here as unusual is an oblique expression of a concern that charging violations of sections 217 and 245 in one count has a "chilling effect" on the assertion of constitutional rights, i.e., the defendant is encouraged to plead guilty to assault with intent to commit murder—thereby waiving his privilege against self-incrimination and his rights to jury trial and confrontation of adverse witnesses—to avoid the greater maximum penalty resulting from conviction of assault with a deadly weapon.[1]

---

[1]Parenthetically, it is questionable whether charging violation of section 245 as an offense included within section 217 actually chills the assertion of constitutional rights to any significant degree since defendant pleaded not guilty, as did similarly situated defendants in, e.g., *People* v. *Robinson* (1970) 6 Cal.App.3d 448 [86 Cal.Rptr. 56], *People* v. *Jennings* (1972) 22 Cal.App.3d 945 [99 Cal.Rptr. 739], *People* v. *Gonzalez*

The leading case associated with the chilling effect doctrine is *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209], which considered the constitutionality of the provision in the Federal Kidnaping Act (18 U.S.C. § 1201(a)) that the death penalty could be imposed only by a jury. "The inevitable effect of [exposing only those who assert the right to contest their guilt before a jury to the risk of the death penalty]," the Supreme Court held, "is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." (390 U.S. at p. 581 [20 L.Ed.2d at p. 147].)

Rejecting the government's argument that the statute's chilling effect was merely incidental to its objective of making the death penalty discretionary with the jury, the court stated: "The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is *unnecessary* and therefore excessive." (390 U.S. at p. 582 [20 L.Ed.2d at p. 147]; italics added.) The chilling effect of the act was unnecessary, the court held, because the goal of limiting the death penalty to cases in which the jury recommends it could be achieved without penalizing those defendants who might plead not guilty and demand jury trial. For example, the choice between life imprisonment and capital punishment could be left to a jury in every case, regardless of how the defendant's guilt is determined. (390 U.S. at p. 582.)

By emphasizing "[t]he People are still free to charge violations of sections 217 and 245 in separate counts" (*ante,* p. 561), the majority implies the chilling effect of charging violation of section 245 as an offense included within section 217 is unnecessary because it could be avoided by charging the crimes in separate counts. The chilling effect persists, however, whether violations of those sections are charged separately or inclusively. It is inherent in the fact section 245 provides for a greater maximum punishment than section 217.

If the crimes are charged in separate counts and the People offer to dismiss the assault with a deadly weapon charge in return for a guilty plea to assault with intent to commit murder, a conventional plea bargain offer, the defendant has the same inducement to thereby waive his constitutional rights Schueren had. The majority does not suggest a defendant who rejects such an offer is constitutionally entitled to a maximum term of not more

---

(1972) 28 Cal.App.3d 1091 [104 Cal.Rptr. 530], and three cases pending in this court: *People* v. *Draper* (Crim. No. 16750, hg. granted 14 Feb. 1973); *People* v. *Bulgren* (Crim. No. 16739, hg. granted 8 Feb. 1973); and *People* v. *Roberts* (Crim. No. 16776, hg. granted 28 Feb. 1973).

than 14 years if he is found guilty of assault with a deadly weapon, or that such an offer unnecessarily chills assertion of constitutional rights. The only distinction between this case and the hypothetical case is that when violation of section 245 is charged as an offense included within section 217 the offer to accept a guilty plea to the latter is built into the accusatory pleading, a distinction without constitutional significance. Since it is the penalty differential which encourages guilty pleas in either case and the penalties were prescribed by the Legislature, the chilling effect cannot be deemed "unnecessary" if proper deference is given to legislative authority, for the Legislature has the "broadest discretion possible in enacting penal statutes and in specifying punishment for crime. . . ." (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921]; *People* v. *Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880].)

Moreover, if punishment not inflicted in the ordinary course of events is unusual, the majority has created such punishment where none existed before. Prior to this decision all defendants convicted of violating section 245 were subject to a maximum term of life imprisonment. Defendants charged in separate counts will continue to be subject to such punishment. Only those defendants charged in an accusatory pleading drafted in ignorance of this decsion will have the benefit of the unusually lenient penalty provided by it.

I would affirm the judgment without modification.

Respondent's petition for a rehearing was denied January 23, 1974. Clark, J., was of the opinion that the petition should be granted.