Filed 9/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GIOVANNY RODRIGUEZ,<br><br>Defendant and Appellant. | B291137<br><br>(Los Angeles County<br>Super. Ct. No. BA441320) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Melissa L. Camacho-Cheung, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General of California, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie C. Brenan, Supervising Deputy Attorney General, Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.

————————————

Giovanny Rodriguez shot a man. A jury convicted Rodriguez of attempted murder and other crimes. On appeal, Rodriguez argues (1) the trial court should not have admitted his jailhouse confession, (2) the court should not have instructed the jury that eyewitness certainty should be considered when evaluating eyewitness reliability, (3) there was cumulative error, (4) his sentence is unconstitutional, and (5) we should vacate court fees and stay his restitution fine. We affirm. Code references are to the Penal Code.

I

The facts are these.

Rodriguez was in a gang. He and a fellow gang member followed a man to Monterey Park, where Rodriguez shot and wounded the man. Eight months later, Rodriguez was in jail on an unrelated matter. Police put an informant in his holding cell. The informant dressed and acted like an inmate. Rodriguez was not *Mirandized*. (*Miranda v. Arizona* (1966) 384 U.S. 436, 444 (*Miranda*).) The informant struck up a conversation with Rodriguez: "What's up, homie? Player from Harbor City." Rodriguez told the informant that Rodriguez and his "crime partner" "did a shooting . . . [a]ttempted murder." At one point, without exposing the undercover operation, a detective entered the cell to tell Rodriguez he would be charged with attempted murder. That triggered more discussion between Rodriguez and the informant about the shooting. Police secretly recorded all this.

After Rodriguez spoke to the informant for an hour and forty minutes, police removed Rodriguez from the holding cell. The detective *Mirandized* Rodriguez and, after recounting facts about the attempted murder, interrogated him. (*Miranda, supra,*

2

384 U.S. at p. 444.)  Then police returned Rodriguez to the holding cell.

The informant asked Rodriguez, "What happened fool?" Rodriguez replied, "Fuckin, uh, they know everything fool."  After talking some more, Rodriguez said to the informant, "Look, here's what happened.  I can have a little bit of trust in you." Rodriguez proceeded to tell the informant the details of the shooting.  This second conversation — after Rodriguez returned from speaking with the detective — lasted 20 minutes.

The trial court denied Rodriguez's motion to exclude his conversations with the undercover informant.  The prosecution played the recording for the jury.

Two eyewitnesses identified Rodriguez at trial.  The trial court instructed the jury with CALCRIM No. 315, which tells jurors to consider a series of questions when evaluating an eyewitness's identification, including "How certain was the witness when he or she made an identification?"  (CALCRIM No. 315.)  Rodriguez's counsel did not object.

The jury convicted Rodriguez of attempted murder and other crimes.  The jury could not reach a unanimous verdict on whether the attempted murder was premeditated, and the trial court granted the prosecution's motion to dismiss this charge. The trial court sentenced Rodriguez to 45 years and four months to life.  It imposed a $300 victim restitution fine, a $90 criminal conviction assessment fine, and a $120 court operations assessment fine.

## II

The trial court properly admitted Rodriguez's conversation with the informant.

3

Rodriguez argues admission of the conversation violated (1) his Fifth Amendment rights because police failed to *Mirandize* him before the conversation, and (2) his due process rights because police coerced him to confess. We address each erroneous argument in turn. We review the trial court's findings of fact for substantial supporting evidence but independently review the trial court's legal determinations. (*People v. Orozco* (2019) 32 Cal.App.5th 802, 811.)

A

The government was not required to *Mirandize* Rodriguez before his conversation with the informant.

*Miranda*, *supra*, 384 U.S. at page 444, held that, under the Fifth Amendment, courts may admit statements made by suspects during a custodial interrogation only if police first warn suspects of their rights. But *Miranda* warnings are not required when suspects give voluntary statements to a person they do not know is a police officer. (*Illinois v. Perkins* (1990) 496 U.S. 292, 294.)

Rodriguez did not know he was speaking to the police when he talked to the undercover informant, so no *Miranda* warning was required. Rodriguez claims he "felt coerced" because the informant posed as "an older, well-connected gang member." Rodriguez says that coercion was especially strong because he was confined to the same cell as the informant for around two hours.

The coercion identified by Rodriguez is not the sort that concerned the *Miranda* court. *Miranda* does not protect suspects when they describe criminal activities to people they think are cellmates. (*Illinois v. Perkins*, *supra*, 496 U.S. at p. 298.) Rather, *Miranda* addressed concerns that a "police-dominated

4

atmosphere" generates "inherently compelling pressures" that "undermine the individual's will to resist" questioning. (*Id*. at p. 296 [quoting *Miranda*, *supra*, 334 U.S. at pp. 445, 467.].) Those concerns evaporate when, as here, an inmate speaks freely to someone he believes is a fellow inmate. (*Illinois v. Perkins*, *supra*, 496 U.S. at p. 296.)

Rodriguez cites no case holding *Miranda* warnings are required before an undercover informant speaks to an inmate. We know of none. During Rodriguez's conversation with the informant, the government did not brandish its authority or intimidate him into speaking. Like the defendant in *Perkins*, Rodriguez spoke freely and at his own peril. (*Illinois v. Perkins*, *supra*, 496 U.S. at p. 298.)

B

The government did not coerce Rodriguez into confessing involuntarily.

The due process clauses of the federal and California constitutions bar courts from admitting involuntary confessions. (*Withrow v. Williams* (1993) 507 U.S. 680, 688–689; *People v. Boyette* (2002) 29 Cal.4th 381, 411.) To determine whether Rodriguez's confession was involuntary, we assess the circumstances to see if his will was overborne. (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 225–226; *People v. Boyette*, *supra*, 29 Cal.4th at p. 411.)

Rodriguez argues the government coerced him into confessing because he was "put in a locked cell with an older gang member" to whom Rodriguez was required to "show respect to, gain respect from, and gain protection from." Rodriguez was 26 years old; the undercover informant claimed to be 35.

No facts support this factual argument. Nothing in the record shows gang members customarily defer to traditional figures of authority, like elders. An age gap of nine years is less than the interval between parent and child. No evidence shows this gap is meaningful to gang members as a general matter. Deference to seniority could be a factor in some factual settings, but we will not embrace this theory as a universal principle based only on anecdotal speculation.

The trial court said, "I didn't hear a scintilla of evidence that Mr. Rodriguez was in any way pressured to give a statement. My impression was when they finally split up, they were new best friends. Sounded to me like they were [having] a good time in that cell talking, laughing, discussing things. There was not an iota of evidence to suggest Mr. Rodriguez was pressured."

Rodriguez's confession was voluntary and admissible.

### III

The trial court properly instructed the jury with CALCRIM No. 315. We independently review the propriety of a jury instruction. (*Yale v. Bowne* (2017) 9 Cal.App.5th 649, 657.)

Rodriguez argues CALCRIM No. 315 violates his Fourteenth Amendment due process rights because it tells the jury to consider eyewitness certainty. Rodriguez's counsel did not object at trial. This is forfeiture.

Rodriguez acknowledges *People v. Sánchez* (2016) 63 Cal.4th 411, 462 (*Sánchez*), reiterated three decades of California Supreme Court precedent that a trial court may instruct the jury to consider eyewitness certainty. Rodriguez concedes *Sánchez* binds us. Rodriguez says he raised this issue on appeal in anticipation the Supreme Court will overrule *Sánchez* in a case

currently before it, *People v. Lemcke*, review granted October 10, 2018, S250108. The Supreme Court has not issued an opinion in *Lemcke*. *Sánchez* remains valid law. Even were there no forfeiture, we would find no error in the trial court's instruction to the jury.

## IV

Rodriguez argues the trial court deprived him of due process through the cumulative error of admitting his jailhouse conversation and using CALCRIM No. 315. Neither action was error. There was no cumulative error.

## V

Rodriguez challenges his prison sentence. The issue arose because the jury could not reach a verdict on a premeditation enhancement to the attempted murder count, and the trial court later granted the prosecutor's motion to dismiss the allegation. Rodriguez argues he is being punished for winning at trial: he contends the sentence he got is unconstitutional because it is worse than the one he would have received had he been *convicted* of attempted premeditated murder. His constitutional argument is in two parts. Rodriguez claims his sentence is impermissibly unusual under the California Constitution because it is more severe than the sentence he would have received had he lost on the premeditation enhancement. Rodriguez also claims his sentence violates the Fourteenth Amendment of the federal Constitution because it is fundamentally unfair.

Rodriguez forfeited these constitutional arguments, which also fail on the merits.

## A

Rodriguez's argument turns on comparing his actual sentence against the sentence he would have gotten had he lost

on the premeditation issue.  Thus we begin by comparing these two sentences:  the one Rodriguez would have received if he had been convicted of attempted willful, deliberate, and premeditated murder (which we shorten to attempted premeditated murder) versus Rodriguez's actual sentence.

1

Had Rodriguez been convicted of the premeditation enhancement, his sentence would have been two indeterminate life terms with parole eligibility after 40 years.  The analysis supporting this conclusion requires a substantial tour of current California sentencing law, as follows.

The prosecution charged attempted premeditated murder under section 187, subdivision (a), and section 664, subdivision (a).  A conviction for this charge and allegation carries a sentence of "life with the possibility of parole."  (§ 664, subd. (a).)  This is an indeterminate sentence.   (See *People v. Felix* (2000) 22 Cal.4th 651, 659 [explaining "both straight life sentences and sentences of some number of years to life are indeterminate sentences not subject to the" Determinate Sentencing Act].)

The prosecution alleged a section 186.22 gang enhancement.  Section 186.22 defines the punishment that follows if the jury finds an alleged gang enhancement is true.  The punishment varies with the seriousness of the gang member's actions.  When the gang member commits a crime punishable by imprisonment "for life," this section prohibits parole until the defendant serves at least 15 years in prison.  (§ 186.22, subd. (b)(5).)  It states: "any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served."  (§ 186.22,

subd. (b)(5).) Attempted premeditated murder carries a life sentence. Rodriguez thus would have been ineligible for parole for 15 years.

The prosecution also charged Rodriguez with the section 12022.53, subdivision (d), gun enhancement. This charge carries a consecutive term of 25 years to life. (§ 12022.53, subd. (d).) This is an indeterminate sentence. (See *People v. Felix*, *supra*, 22 Cal.4th at p. 659.)

To determine Rodriguez's parole eligibility we look to section 3046. It provides, "If two or more life sentences are ordered to run consecutively to each other pursuant to Section 669, an inmate so imprisoned shall not be paroled until he or she has served the term specified in subdivision (a) on each of the life sentences that are ordered to run consecutively." (§ 3046, subd. (b); see also *People v. Franklin* (2016) 63 Cal.4th 261, 273 [applying section 3046].) The relevant term specified in subdivision (a) is the "term as established pursuant to any other law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole." (§ 3046, subd. (a)(2).) Thus, Rodriguez would be ineligible for parole until he served 15 years under section 186.22, subdivision (b)(5), followed by 25 years under section 12022.53, subdivision (d).

So if Rodriguez had been convicted of the willful, deliberate, and premeditated enhancement, his sentence would have been two indeterminate life terms with parole eligibility after 40 years.

2

Next we discuss the sentence Rodriguez actually received. The jury could not reach unanimity on the premeditation

9

enhancement. Eleven jurors found the enhancement true; one found it not true. Without the premeditation allegation, section 187 and section 664 did not provide a life sentence and, in turn, section 186.22, subdivision (b)(5), did not require Rodriguez to serve 15 years before becoming parole eligible. Instead, the trial court sentenced Rodriguez to the determinate upper term of nine years for attempted murder. The true finding on the gang enhancement required a different punishment upon Rodriguez's conviction of attempted, non-premeditated murder, a violent felony, which does not have a base term of life. Specifically, section 186.22, subdivision (b)(1)(C), provided an additional term of 10 years. As a result, Rodriguez received a determinate term of 19 years rather than an indeterminate life sentence with parole eligibility after 15 years.

The trial court imposed a consecutive 25 years to life sentence for the section 12022.53, subdivision (d), gun enhancement.

The determinate term must run before the indeterminate sentence, and the time Rodriguez serves on the determinate term does not count toward the minimum term of the indeterminate sentence. (§ 669.) Rodriguez is eligible for custody credit of up to 15 percent of the time he serves on the determinate term. (See §§ 2933, 2933.1.) If he earns these custody credits, he will serve only 16.15 years on the determinate sentence.

Thus, Rodriguez will serve a determinate term of 16.15 to 19 years, plus a single indeterminate life sentence. He will become parole eligible after 44 years, or 41.15 years if he earns custody credits.

3

The difference between what Rodriguez might have gotten and what he did get is an indeterminate life term with the possibility of parole after 15 years versus a determinate term of 16.15 to 19 years. With a determinate term of 16.15 to 19 years, Rodriguez has certainty the term will end at 19 years and the possibility the term will end as early as 16.15 years.

This difference stems from the interaction of section 664 and section 186.22. If the murder attempted is premeditated, section 664, subdivision (a), provides a life sentence, and section 186.22, subdivision(b)(5), requires a minimum of 15 years served before a defendant becomes parole eligible. If the murder attempted is not premeditated, section 664, subdivision (a), provides a determinate upper term of nine years, and section 186.22, subdivision (b)(1)(C), adds an additional 10 years.

B

First we address forfeiture. Then we analyze the merits.

1

We begin with forfeiture. Rodriguez forfeited his sentencing argument by failing to raise it in the trial court. (*People v. Baker* (2018) 20 Cal.App.5th 711, 720.)

Rodriguez does not dispute he forfeited his Fourteenth Amendment argument. Yet he insists his California Constitution argument is "purely legal" and so is exempt from forfeiture.

Arguments about unusual punishment generally require a fact-specific inquiry into the offense and offender. (See *People v. Norman* (2003) 109 Cal.App.4th 221, 229.) Rodriguez identifies no authority holding an as-applied constitutional challenge to a sentence is "purely legal."

In any event, even purely legal questions can be forfeited. Appellate courts review the decisions that trial lawyers ask trial judges to make. By skipping the trial court, lawyers deny trial courts and opposing counsel the ability to respond and to fix the problem on the spot. Here, for instance, the trial court announced the case was before the court for sentencing and also for the prosecutor to determine whether she wanted to proceed on the premeditation allegation on which the jury hung 11 to one. Had Rodriguez mentioned the constitutional objection he now raises for the first time on appeal, the court and the parties would have learned about the objection. This could have changed a lot. The prosecutor could have retried the enhancement. Or the parties could have entered plea negotiations to compromise their differences. Or the group could have generated other options and remedies that we cannot imagine. Or defense trial counsel may have decided to remain silent on the evaluation that a 19-year determinate sentence followed by one indeterminate life term was preferable to two consecutive indeterminate life terms.

Forfeiture rules create and enforce incentives. As a practical matter, it is highly desirable for litigants to raise issues when the trial court and the parties can resolve them swiftly and cheaply. This principle is traditional, just, fair, and socially rational. Identifying an issue and determining the cure before the jury leaves is better than years of appellate delay. Tardy remands make for duplicative processes on stale records.

Every trial judge of experience appreciates the wisdom of the rule requiring timely objections. Appellate courts should respect and enforce this fundamental element of our process.

Rodriguez has forfeited his argument.

We consider the merits of Rodriguez's argument to forestall a habeas petition premised on ineffective assistance of counsel.

Rodriguez argues his sentence is unusual because it is "Longer Than The One He Would Have Served Had He Been Convicted" of attempted premeditated murder. For support, he cites *People v. Schueren* (1973) 10 Cal.3d 553 (*Schueren*).

This case differs from *Schueren*.

The *Schueren* prosecutor charged John Otto Schueren with assault with a deadly weapon with intent to commit murder, which carried a sentence of one to 14 years. (*Schueren, supra*, 10 Cal.3d at pp. 555–556.) The jury found Schueren guilty of the lesser included crime of assault with a deadly weapon, which carried a sentence of six months to life. (*Id*. at p. 556.) The *Schueren* court held Schueren's sentence of six months to life was unconstitutional because "an accused is normally not subject to an increased *maximum* prison term as a consequence of . . . exercising his constitutional rights [and] successfully defending against the crime charged." (*Id*. at pp. 560–561, italics added.)

Rodriguez's situation is different. Rodriguez, unlike Schueren, does not face "an increased maximum prison term" because he "successfully defend[ed] against the crime charged." Rodriguez distracts from this distinction by focusing on his *minimum* parole eligibility. But *Schueren* instructs us to look to defendants' "*maximum* prison term," not to their minimum potential term. (*Schueren, supra*, 10 Cal.3d at p. 560, italics added.)

*Schueren*'s focus on defendants' maximum prison term rather than their minimum parole eligibility makes sense. Courts cannot predict how parole authorities will exercise their

discretion in the future. No one can know the attitudes of California's governors and voters in the decades ahead. It is possible the minimum term will be completely meaningless because authorities will never grant parole on a first application, or ever. But courts can calculate defendants' maximum prison terms.

When we focus on Rodriguez's maximum term, we see *Schueren* undercuts rather than supports Rodriguez's argument. Rodriguez's ultimate sentence of a 19-year determinate term and a single indeterminate life sentence is not more severe than his potential sentence of two indeterminate life terms. Each sentence has one indeterminate life term, but his actual sentence has an additional 19-year determinate term while his potential sentence has an additional indeterminate life sentence.

*Schueren* found a sentence with a higher potential minimum (one year) but lower maximum (14 years) less severe than a sentence with a lower potential minimum (six months) but higher maximum (life). (*Schueren, supra*, 10 Cal.3d at pp. 555–556.) Rodriguez's ultimate sentence is analogous to the one *Schueren* found less severe: it has a higher minimum (44 years) but lower maximum (one life term) than his potential sentence, which had a lower minimum (40 years) but higher maximum (two life terms).

Even if Rodriguez's minimum term were relevant, and we tried to predict decisions of some future parole board, we still would confront in this case a record that fails to address whether Rodriguez's actual sentence is more severe than his potential sentence. This is exactly the sort of factual issue that could have been and should have been addressed at the trial court; because trial counsel did not object, the trial court did not make this

14

factual inquiry, which bolsters our conclusion that Rodriguez's argument is forfeited.

Rodriguez has made no showing that a future, or even current, parole board will parole someone convicted of attempted premeditated murder, serving two indeterminate life sentences, before someone convicted of attempted murder, serving a single indeterminate life sentence. Common sense suggests a parole board would be inclined to parole Rodriguez later had the jury found the murder he attempted was premeditated. Presumably Rodriguez's trial counsel thought so too, which explains his challenge to the premeditation enhancement.

Rodriguez's argument that his sentence violates the Fourteenth Amendment's due process clause also fails. Rodriguez identifies neither procedural shortcoming in his sentencing nor a substantive due process right to a fair sentence. (See *People v. Watson* (2017) 8 Cal.App.5th 496, 519–520.)

## VI

Rodriguez's opening brief requests we vacate court fees and stay his restitution fine in light of *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Rodriguez concedes he did not object to the fees or fines at the trial court, so he has forfeited this argument. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1155; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464.)

## DISPOSITION

The judgment is affirmed.


WILEY, J.

I concur:


BIGELOW, P. J.

15

**STRATTON, J., Concurring in part and dissenting in part.**

Any way you slice it, defendant is serving more minimum prison time before he is eligible for parole because he successfully exercised his right to trial on the premeditation allegation. So, even though he is legally less culpable without a finding of premeditation, he faces more minimum time in custody. There is no doubt he is suffering adverse consequences because he decided to go to trial and succeeded.

Unlike the majority, I would not limit the analysis in *People v. Schueren* (1973) 10 Cal.3d 553 (*Schueren*) to cases involving only maximum sentences. *Schueren* lays down a bedrock principle: criminal defendants should not be subject to more punishment as a consequence of successfully defending against the crime charged. Serving more minimum time in prison before being eligible for parole is more punishment.

This analysis does not require any additional fact finding. It is axiomatic that a defendant may challenge a sentence on purely legal grounds. That is the case here.

Who among us thinks it is logical and usual to keep a defendant imprisoned longer for an unpremeditated crime than for the same premeditated crime? This consequence of defendant's successful defense against the premeditation allegation is as unusual as the maximum sentence problem resolved in *Schueren*. It is an unanticipated and uncommon aspect of our sentencing structure in California. Neither the People nor defendants benefit from this anomaly nor should the People or a defendant have to do this type of comparative mathematical calculation when the People decide to charge, or the defendant decides to exercise trial rights. Whatever happens at trial should be accurately reflected in exposure to punishment.

1

Here, defendant ended up being less legally culpable. Common sense dictates it is not normal or usual to then imprison him for a longer minimum term than he would have faced had he pled guilty to all charges.

I would remand for resentencing to an aggregate term of no more than 40 years to life, defendant's minimum exposure had he not successfully defended against the premeditation allegation.

STRATTON, J.