Filed 11/25/20  P. v. Austin CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LENARD AUSTIN, JR.,<br><br>Defendant and Appellant. | 2d Crim. No. B301152<br>(Super. Ct. No. 1027776)<br>(Santa Barbara County) |

Lenard Austin, Jr. appeals the trial court's postjudgment order summarily denying his petition for resentencing under Penal Code[1] section 1170.95.  Austin contends the court erred in finding he was ineligible for resentencing under section 1170.95 because he was convicted of attempted murder (§§ 187, 664) rather than murder.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are recited verbatim from our 2003 unpublished opinion affirming the convictions of Austin and his codefendant Steven Lee. (*People v. Lee* (June 30, 2003, B154641) [nonpub. opn.].) "Lee and Austin entered Anthony's Jewelers in Santa Maria wearing wigs, hats, fake beards, heavy jackets, and black boots. When the owner's son, Jeffrey Shreves, asked if he could help them, they said they were just browsing. After looking into all the display cases, they left. Shortly thereafter, appellants returned, feigning interest in a bracelet.

"The third time appellants entered, they asked to speak to the store's owner, Anthony Chaparro. Chaparro became frightened and asked his son to write down a license plate number if anything should happen. Chaparro asked two other employees to stay near panic buttons. Chaparro asked appellants if he could help them. Appellants did not respond, so Chaparro asked appellants, 'What the fuck do you want?' Austin replied, 'fuck you.' Chaparro retorted, 'get the fuck out of my store.'

"As appellants appeared to be leaving the store, Lee whirled around, grabbed Shreves from behind, and threw him to the ground. Lee pulled a semiautomatic gun from his jacket, pointed it at Shreves, dragged him from the front of the store, and handcuffed him. The receptionist, Misty Sinay, pressed a silent alarm and ducked down. Chaparro fled out the back door and called the police. Estiban Rodriguez, the jewelry repairman, observed this activity on his television monitor. He pushed his panic button and hid in the back of the store.

"Lee demanded that Shreves hand over the keys and retrieve the tape from the surveillance system. Shreves was scared and responded he did not have the keys.

"Lee pointed his gun at Danielle Pfaendler, the assistant manager, who was crouching underneath a desk nearby. Lee told Pfaendler to give him the three rings that were on her fingers, directed her to lie down next to Shreves, and handcuffed her.

"Pfaendler saw one of the men bring Sinay into the back room to retrieve the security tape for Lee, but Sinay did not know how to do it. When she attempted to extract the tape, it jammed. Austin grabbed her arm, pointed his revolver at her, and yelled at her to open the glass jewelry cases. After telling Austin she did not have the keys to open the jewelry cases, she saw him smash open the cases with the butt of his gun and scoop up jewelry with his hands. Shreves also saw appellants scooping up jewelry into their arms. Lee told Sinay to lie on the ground next to Shreves and Pfaendler, and he handcuffed her.

"After asking Shreves and Pfaendler where the cash drawer was, Lee took some money and repaired jewelry from two drawers. One of the men took Shreves' wallet from his back pocket as they ran towards the back door. As they reached the back door, appellants saw Rodriguez and pointed a gun at him. Chaparro saw appellants flee out the back door as he was talking to a police dispatcher on a cell phone outside a nearby restaurant.

"The police converged on the scene, ran after appellants, and shouted at them to stop. Officer McCray, who was unarmed, nearly ran into Lee. Officers McCray and Streker, and other witnesses, testified that Lee pointed a gun at McCray's head and shot once from a distance of about five feet. Officer McCray flinched, jumped to his left, fell to the ground and sought cover

3

behind Streker's motorcycle. Officer Streker screamed at McCray, asking if he had been hit. Officer Streker thought Lee pointed his 9 millimeter gun at him, too.

"Police continued to yell at Lee to stop, but he continued to run while firing another round at the officers. Police shot at Lee several times, striking him as he jumped a picket fence. The wounded Lee fell to the ground.

"After Lee shot at the police, Lee and Austin split up. Austin ran between two houses where he disappeared from view. A neighbor saw Austin throw a large revolver away. Officers found Austin hiding in a garbage can and arrested him as he tried to escape. Officer McCray found a .44 Dan Wesson revolver with five live rounds in it lying in the center median of the street near where Austin was arrested. The gun had been recently fired, but no shell casings were found in the vicinity.

"While patting down Austin, police found many pieces of jewelry in his pockets with tags from Anthony's Jewelers on them. The police found more items of jewelry, two wigs, a metal briefcase, and a loaded Daewoo semiautomatic pistol near where Lee and Austin were captured. Jewelry was also found on the ground behind the store.

"When police approached Lee, who was lying on the ground, they found a Beretta semiautomatic pistol about a foot away from his right hand. The safety of the Beretta was off, no round was in the chamber, and its magazine was found at the base of the fence. A shell casing was found nearby. The casing did not match any of the munitions issued to the policemen who fired at the scene, but it did match some of those within the magazine of Lee's Beretta."

4

A jury convicted Austin of attempted murder of a peace officer (§§ 187, subd. (a), 664), assault on a peace officer (§ 245, subd. (d)(2)), exhibiting a weapon with the intent to resist an officer (§ 417.8), five counts of robbery (§ 211), and commercial burglary (§ 459).  The jury also found true allegations that Austin personally and intentionally used and discharged a firearm and that he knew or should have known that the victim of the attempted murder was a peace officer (§§ 12022.5, subd. (a), 12022.53, subd. (b)).  He was sentenced to life without the possibility of parole plus 33 years and 8 months.  His convictions and sentence were subsequently affirmed on appeal.  (*People v. Lee*, *supra*, B154641.)

In July 2019, Austin filed a petition for resentencing under section 1170.95, which applies to individuals convicted of murder.  The trial court found that appellant was ineligible for relief under section 1170.95 because he was convicted of attempted murder rather than murder, and accordingly denied the petition.

## DISCUSSION

Austin contends the trial court erred in summarily denying his section 1170.95 petition for resentencing.  He claims the court erroneously found that section 1170.95 does not apply to the crime of attempted murder and that denying him relief under the statute violates his right to equal protection and amounts to cruel and unusual punishment.  We are not persuaded.

In 2018, the Legislature enacted Senate Bill No. 1437, which eliminated liability for murder under the natural and probable consequences doctrine.  (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1092-1093 (*Lopez*), review granted Nov. 13, 2019, S258175.)  The natural and probable consequences doctrine provides that "'[a] person who knowingly aids and abets criminal

5

conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)  "'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all.  It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense.'" (*People v. Chiu* (2014) 59 Cal.4th 155, 164, superseded by statute as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103.)

Senate Bill No. 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to *murder*, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6678, italics added; see *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)  Section 188 was amended to require that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2, p. 6679; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)  As a result of this amendment, the natural and probable consequences doctrine can no longer be used to support a murder conviction.  (*Lopez*, *supra*, 38 Cal.App.5th at p. 1103 & fn. 9.)

The legislation also enacted section 1170.95 to allow individuals previously convicted of murder under a natural and probable consequences theory to petition the court to have their murder convictions vacated and to be resentenced. A petitioner is eligible for resentencing if three conditions apply: (1) A charging document "was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea . . . ; [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a).)

Austin is ineligible for relief under the plain text of section 1170.95 because he was not convicted of first or second degree murder. Although they are closely related, "[m]urder and attempted murder are separate crimes." (*Lopez*, *supra*, 38 Cal.App.5th at p. 1109.) Moreover, the remainder of the text of Senate Bill No. 1437 confirms that the Legislature intended the law to apply exclusively to defendants convicted of murder. The law expressly states that "[t]here is a need for statutory changes to more equitably sentence offenders in accordance with their involvement in *homicides*." (Stats. 2018, ch. 1015, § 1(b), p. 6678, italics added.) The Legislature acted "to ensure that *murder* liability is not imposed on a person who is not the actual *killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6678, italics added.) This is not an instance where "'resolution of the statute's ambiguities in a convincing manner is impracticable,'" such that

7

we must apply the rule of lenity to interpret the law in the defendant's favor. (*People v. Avery* (2002) 27 Cal.4th 49, 58.)

Every court to address the issue has concluded that individuals convicted of attempted murder are ineligible for relief under section 1170.95. (See, e.g., *People v. Dennis* (2020) 47 Cal.App.5th 838, 844-847, review granted July 29, 2020, S262184; *Lopez, supra,* 38 Cal.App.5th at pp. 1104-1105; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753, review granted November 26, 2019, S258234; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1016-1018, review granted Mar. 11, 2020, S259948; *People v. Larios* (2019) 42 Cal.App.5th 956, 968-969, review granted Feb. 26, 2020, S259983.) We reach the same conclusion, pending our Supreme Court's resolution of the issue.

Austin complains that this conclusion creates an irrational result in which defendants convicted of murder are punished less severely than those convicted of attempted murder. He relies on *People v. King* (1993) 5 Cal.4th 59, in which the court held that laws providing a benefit to juvenile defendants convicted of murder must be interpreted as providing the same benefit to attempted murderers, even though the literal text of the statute indicates otherwise. In so holding, the court recognized that ""language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."" (*Id.* at p. 69.) As noted in *Lopez*, however, the sentencing provisions in *King* occurred because a series of unrelated statutes and Supreme Court decisions worked together in a way the Legislature had not considered or anticipated. (See *Lopez, supra,* 38 Cal.App.5th at pp. 1106-1107.) "Here, in contrast, we are not dealing with amendments of different statutes in separate codes at different times leading to

8

an unintended result, but a single piece of legislation in which the Legislature unequivocally elected, both in the words it chose and its statement of purpose, to provide a benefit to one category of aiders and abettors prosecuted under the natural and probable consequences doctrine—those facing the lengthiest prison sentences—and not to others." (*Id.* at p. 1107.)

Austin's reliance on *People v. Barrajas* (1998) 62 Cal.App.4th 926, is also unavailing. In that case, the court held that section 1000—which allows defendants convicted of certain drug offenses to enter a diversion program—also applies to those convicted of attempting to commit a predicate offense, even though the statute made no provision for attempts. (*Id.* at p. 929 & fn. 3.) But section 1000 applies to several different criminal offenses, most of which involve the simple possession or use of illegal drugs. (See § 1000, subd. (a).) Section 1170.95, by contrast, involves only the offense of murder. When the Legislature intends for a law to apply to attempted murder, it explicitly says so in the text of a statute. (See, e.g., § 246.1, subd. (a) [law requiring forfeiture of a vehicle used in a crime applies to attempted murder], § 667.5, subd. (c)(12) [defining attempted murder as a violent felony], § 2932, subd. (a)(1) [loss of credit for good behavior for committing attempted murder in prison].)

Moreover, it is not irrational to provide relief for defendants convicted of murder but not attempted murder. As the court explained in *Lopez*, "the gap between a defendant's culpability in aiding and abetting the target offense and the culpability ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense is attempted murder or, in the prosecutor's discretion, aggravated assault. The Legislature

9

could have reasonably concluded reform in murder cases 'was more crucial or imperative.'" (*Lopez*, *supra*, 38 Cal.App.5th at p. 1112.) Given the limited resources available for handling resentencing cases, the Legislature may have decided to make relief available only to murder cases. (See *ibid.*)

To the extent Austin asserts that the exclusion of attempted murder from section 1170.95 violates principles of equal protection, it is well-settled that "[p]ersons convicted of different crimes are not similarly situated for equal protection purposes." (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1565, citations, internal quotation marks and italics omitted.) As the court in *Lopez* recognized, "murder is punished more severely than attempted murder" and "[t]he Legislature is permitted to treat these two groups of criminals differently." (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1109-1110; see also *People v. Munoz*, *supra*, 39 Cal.App. 5th at pp. 760-761.)

We also reject Austin's claim that the exclusion of attempted murder from section 1170.95 violates the state constitutional prohibition against cruel and unusual punishment (Cal. Const., art. I, § 17). *People v. Schueren* (1973) 10 Cal.3d 553, which he offers in support of his claim, is inapposite. The defendant in that case was convicted of a lesser included offense, yet received a longer sentence than he would have received had he been found guilty as charged. (See *id.*, at pp. 559-560.) *Schueren*, however, does not apply to the denial of postconviction relief. As our colleagues in the Fourth District explained in affirming the denial of a petition for resentencing under Proposition 36, "[u]nder the laws then in effect, defendant received a valid indeterminate sentence. There was nothing unusual about his sentence, as it was not one 'that in the

ordinary course of events is not inflicted.'" (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1468-1469.) The enactment of a law providing postconviction relief for defendants convicted of murder, but not defendants such as Austin who were convicted of attempted murder, "does not retroactively convert defendant's otherwise lawful sentence into a constitutionally 'unusual' one under *Schueren*." (*Id.* at p. 1469.) Accordingly, Austin fails to meet his "considerable burden" of showing that he has been subjected to cruel and unusual punishment. (See *People v. Wingo* (1975) 14 Cal.3d 169, 174.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


11

Gustavo Lavayen, Judge
Superior Court County of Santa Barbara
_____

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.