Filed 6/24/24  P. v. Long CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PHILLIP GEROME LONG,<br><br>    Defendant and Appellant. | F079251<br><br>(Super. Ct. No. F13907709)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Between May and December 2011, defendant Phillip Gerome Long sexually abused three girls under 10 years old multiple times. A jury convicted defendant of oral copulation with a child under 10 years old (three counts), lewd acts upon a child under 14 years old (six counts), and possession of child pornography. The trial court sentenced defendant to a total term of 396 years to life in prison, including six separate terms of 50 years to life, pursuant to the "One Strike" law (Pen. Code, § 667.61)[1] and the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

Defendant contended on appeal that (1) the trial court violated his right to due process by sentencing under the provisions of subdivision (j)(2), which had not been specifically alleged in the amended information; and (2) his sentence of 396 years to life in prison violated the Eighth Amendment bar on cruel and unusual punishment. Defendant also requested we vacate the judgment as to the presentence report fee in light of Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869).

The People argued that the amended information's reference to subdivisions (b) and (e)(4) adequately provided notice to defendant that he would be sentenced pursuant to subdivision (j)(2) through that subdivision's incorporation into subdivision (b). The People also argued that defendant forfeited his argument that his sentence violated the Eighth Amendment to the United States Constitution and that it failed on the merits. The People agreed that the presentence report fee should be vacated. We affirmed defendant's judgment.

Defendant petitioned the California Supreme Court for review, reasserting his challenges to his sentence. The Supreme Court granted review and, on May 15, 2024, transferred the case back to this court with directions to vacate our decision and

---

[1] All statutory references are to the Penal Code unless otherwise noted; undesignated subdivisions are to section 667.61.

reconsider the cause in light of *In re Vaquera* (2024) 15 Cal.5th 706 (*Vaquera*). Having done so, we reject defendant's challenge to his sentence on Eighth Amendment grounds but conclude that the trial court erred in sentencing defendant pursuant to subdivision (j)(2). We reverse the judgment and remand the matter for resentencing. No presentence report fee may be imposed upon resentencing.

## PROCEDURAL BACKGROUND

Originally charged by complaint, defendant was held to answer after his preliminary hearing on April 24, 2014. The Fresno County District Attorney filed an amended information on February 25, 2019, charging defendant with oral copulation with a child 10 years old or younger (§ 288.7, subd. (b); counts 1–4),[2] lewd acts upon a child under 14 years old (§ 288, subd. (a); counts 5–11),[3] and possession of child pornography (§ 311.11, subd. (a); count 12). As to all counts, the amended information alleged a prior "strike" conviction within the meaning of the Three Strikes law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) As to counts 5 through 11, the amended information alleged "within the meaning of [subdivision] (b), … the following circumstances apply: the defendant committed an offense specified in [subdivision] (c) against more than one victim - [subdivision] (e)(5) [*sic*]."[4] (Brackets in original removed.)

Defendant pleaded not guilty to the charges in the amended information. After a 12-day trial, the jury convicted defendant of counts 1 through 3, 5 through 8, and

---

[2]    Counts 1 through 4 involved victim A.A.

[3]    Counts 5 through 8 involved victim A.A., count 9 involved victim D.M, count 10 involved victim A.B., and count 11 involved victim A.C.

[4]    Subdivision (e)(5) was renumbered as subdivision (e)(4) effective September 9, 2010. (Stats. 2010, ch. 219, § 16, p. 1026.) Defendant has not raised any issue as to the error in statutory reference. (See *People v. Thomas* (1987) 43 Cal.3d 818, 826 [where defendant not misled, specification of wrong number in applicable statute is not controlling in light of specific language of accusatory pleading describing allegation]; *People v. Schueren* (1973) 10 Cal.3d 553, 558 ["even a reference to the wrong statute has been viewed of no consequence under the circumstances there appearing"].)

10 through 12 on March 15, 2019.[5] The jury also found true the multiple victim circumstance allegation pursuant to subdivision (e)(4). That same day, defendant waived his right to a jury trial regarding his prior conviction and admitted the prior serious felony conviction allegation.

The trial court sentenced defendant on April 26, 2019. Defense counsel pointed out the presentence report reflected the wrong judicial officer, requested the court exercise its discretion to strike defendant's prior serious felony conviction, but voiced no other objections to the sentence. The court characterized the evidence in the case as "quite troubling" and defendant's conduct as "quite egregious." The court characterized the child pornography images as "quite vile" and "something that [it] cannot forget." The court also considered the victims, "especially with regards to [A.B.] when she testified," and stated, "she was quite devastated still by her experience." The court denied the motion to strike, also noting defendant had been discharged from parole for assaulting and threatening his wife only one year prior to the instant offenses.

The trial court denied probation and sentenced defendant, noting that all counts were second strike offenses requiring twice the term otherwise provided. (See § 667, subd. (e)(1).) For each of counts 5 through 8, 10, and 11, the court sentenced defendant to a term of 50 years to life.[6] As to each of counts 1 through 3, the court sentenced defendant to a term of 30 years to life.[7] The court sentenced defendant to six years on

---

[5] The jury acquitted defendant of count 4 (involving victim A.A.) and count 9 (involving victim D.M.).

[6] The court sentenced sentenced defendant pursuant to subdivisions (b) and (j)(2) which provide for a sentence of 25 years to life, and section 667, subdivision (e)(1) provides that any determinate term or minimum indeterminate prison term must be twice the term otherwise provided as punishment.

[7] Section 288.7, subdivision (b) provides for a punishment of 15 years to life in prison, doubled pursuant to section 667, subdivision (e)(1).

count 12.[8]  The total term of imprisonment was 396 years to life, plus a $3,000 restitution fine (§ 1202.4), a stayed $3,000 parole revocation fine (§ 1202.45, subd. (a)), a $40 court operations fee (§ 1465.8), a $30 conviction assessment (Gov. Code, § 70373), and a $296 presentence report fee (former § 1203.1b).

This timely appeal followed on April 26, 2019.

## FACTS

### I.    People's Case

Christina[9] met defendant through her ex-boyfriend, and they had been family friends for a few years.  In 2011, Christina's daughter A.A. was six or seven years old.  That year, defendant and his ex-wife Cynthia would often watch A.A. while Christina was working.  Christina and Patricia were sisters.  At times, during the eight months between May and December, Patricia's daughters, A.B., A.C., and D.M., would visit A.A. while she was at defendant's residence.  At that time, A.B. was seven or eight years old, A.C. was five years old, and D.M. was 10 years old.

According to A.A., while she was in defendant's care, he put his hand on her vagina, masturbated, forced her to swallow his sperm, forced her to touch his penis until he ejaculated on multiple occasions, pushed her to the floor and forced his penis a small way into her vagina and/or anus several different times, used his tongue to lick her vagina, and made her lick his penis.

Eventually, A.A. refused to go to defendant's apartment.  Christina learned from her nieces that A.A. had been sexually abused and, upon questioning A.A., learned what defendant had done to A.A.  Christina contacted the police.

---

[8]     The court selected the three-year upper term provided by section 311.11, subdivision (a) and section 18, subdivision (a), doubled pursuant to section 667, subdivision (e)(1).

[9]     We refer to the parties by their first names for clarity and convenience, because some of them share a last name.  No disrespect is intended.

According to A.B., when she would visit A.A. at defendant's residence, defendant would remove their clothing and touch their vaginas. He would chase them and when they were on the floor, pull them to him by their feet, remove their underwear, and touch them.

A.C. also described visiting A.A. at defendant's residence three or more times. Defendant would "tickle" her and A.A. when she visited, at times touching their vaginas over their underpants and other times making them disrobe, spread their legs, and touching them directly.

D.M. described an incident when she was in the car with defendant and he slid his hand up her leg, touching her vagina inside her shorts and underwear. In an interview several years earlier, D.M. described two other times defendant touched her vagina when she was at defendant's residence.

All four girls were interviewed in May 2013, and their interviews were entered into evidence. In August 2013, detectives executed a search warrant at defendant's residence and seized a laptop computer containing 900 images of child nudity or pornography depicting "mostly prepubescent undeveloped children" "engaged in sexual activity or focussing [*sic*] on the child's genitalia" and a desktop computer containing nine images of child pornography.

## II.     Defense Case

### A.     Testimony of Defendant's Former Spouse

Cynthia divorced defendant in 2003 but was living with him again when the instant offenses occurred in 2011. Cynthia worked a graveyard shift Tuesday through Saturday. A.A. visited their apartment frequently. Cynthia testified that defendant was like a grandfather to A.A. and confirmed that A.A. and the other girls would frequent the apartment, sometimes spending the night when she was not present, but Cynthia denied defendant had behaved inappropriately with them.

## B. Defendant's Testimony

Defendant denied molesting the children but agreed that they ran around the apartment naked "like any normal kid would do." He denied knowledge of or responsibility for the images found on the computers.

## DISCUSSION

*I.* ***Defendant's due process right to notice of his charges and punishment was violated because the amended information did not provide him notice that he would be sentenced to 25 years to life pursuant to subdivision (j)(2).***

Defendant argues the trial court's imposition of 25-year-to-life terms on counts 5 through 8, 10, and 11 violated his due process rights because the information did not mention subdivision (j)(2). Based upon our Supreme Court's recent decision in *Vaquera*, *supra*, 15 Cal.5th 706, we agree.

## A. Background

### 1. The Amended Information

As to counts 5 through 11, the amended information alleged the multiple victim circumstance of the One Strike law as follows: "[W]ithin the meaning of [subdivision] (b), … the following circumstances apply: the defendant committed an offense specified in [subdivision] (c) against more than one victim - [subdivision] (e)([4])." (Brackets in original removed.)

### 2. The One Strike Law

"The Legislature enacted the One Strike law to increase the penalties imposed on defendants who commit certain sexual offenses [listed in subdivision (c)] under specified circumstances. (Sen. Bill No. 26 (1993–1994 Reg. Sess.); Stats. 1994, ch. 14, § 1, p. 2680.) The more serious circumstances were listed in subdivision (d) of section 667.61, the less serious in subdivision (e). [Citation.] [Originally, t]he penalty imposed depended on the number and seriousness of those circumstances: If a defendant

7.

committed an offense 'under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e),' they were to be sentenced to 25 years to life in state prison. (Former § 667.61, subd. (a).) If they committed their offense under just one of the circumstances specified in subdivision (e), however, they were to be sentenced to 15 years to life in prison. (Former § 667.61, subd. (b).) The age of the victim was not a factor under this scheme.

"The One Strike law has been amended several times, including to increase the number of offenses to which its provisions apply and to mandate consecutive sentences for defendants convicted of certain offenses. (See Prop. 83, Gen. Elec. (Nov. 7, 2006), § 12; Sen. Bill No. 1128 (2005–2006 Reg. Sess.); Stats. 2006, ch. 337, § 33, p. 2639.) The most recent substantive amendments were made in 2010, when the Legislature increased the penalties imposed on defendants convicted of sexual offenses against minors. (See Stats. 2010, ch. 219, § 16; Legis. Counsel's Dig., Assem. Bill 1844 (2009–2010 Reg. Sess.) [(Chelsea King Child Predator Prevention Act of 2010)].) Under the current version of the law, the penalty imposed on a defendant depends not only on the circumstances underlying their offense [subdivisions (d) and (e)] but also on the nature of the offense itself and the ages of the victim and the defendant." (*People v. Betts* (2020) 55 Cal.App.5th 294, 299.)

The Chelsea King Child Predator Prevention Act of 2010 (Chelsea's Law) added the limiting language "Except as provided in subdivision (j), (*l*), or (m)" to subdivision (a)[10] and subdivisions "(j), (*l*), or (m)" to the existing limiting language in subdivision (b). (Subds. (a), (b), as amended by Stats. 2010, ch. 219, § 16, p. 1025; see Amendments, Deering's Ann. Pen. Code (2021 supp.) foll. § 667.61, p. 330.) The amendment also

---

**10**     Subdivision (a) provides for a 25-year-to-life term where at least one circumstance in subdivision (d) is involved or two circumstances from subdivision (e). Where subdivision (d) circumstances are not involved, subdivision (b) provides for a 15-year-to-life term when only one circumstance from subdivision (e) is involved.

added subdivisions (j) through (n) and redesignated former subdivision (j) as subdivision (o). (Subds. (j)–(n), (o), as added & amended by Stats. 2010, ch. 219, § 16, p. 1027; Amendments, Deering's Ann. Pen. Code, *supra*, foll. § 667.61, p. 330.) Where an information charges one of the nine offenses listed in subdivision (c), the amendments increase the penalties otherwise provided in subdivisions (a) and (b), depending upon the age of the minor victim (over or under 14 years old) and the defendant (over or under 18 years old), and whether the prosecution has proven at least one circumstance from subdivision (d) or at least two circumstances from subdivision (e) (in which case the penalty is life in prison without parole), or only one circumstance from subdivision (e) (providing for a sentence of 25 years to life). (Subds. (j), (*l*), (m).)

Subdivision (j) applies where the victim is 14 years old or younger. If one circumstance from subdivision (d) or two circumstances from subdivision (e) are involved, subdivision (j)(1) requires a sentence of life without parole rather than the 25-year-to-life sentence otherwise provided for in subdivision (a).[11] Where the victim is younger than 14 years old and the offense involves one circumstance from subdivision (e), subdivision (j)(2) provides for a sentence of 25 years to life rather than the 15-year-to-life sentence otherwise provided by subdivision (b). (Subds. (b), (j)(2).) The law mandates the same penalties for defendants whose victims are minors 14 years old or older, but only where a defendant is convicted of an offense listed in subdivision (n)(1) through (6). (See subds. (*l*), (m), (n).)[12]

In adding enhanced penalties based upon the age of the victim, Chelsea's Law also amended five of the nine qualifying offenses listed in subdivision (c) (§§ 264.1, 286, 287 [former § 288a], 288, 289) and added lengthier determinate penalties based upon the age

---

[11] The life sentence does not apply if the defendant is under 18 years old at the time of the offense. (Subd. (j)(1).)

[12] The offenses listed in subdivision (n)(1)–(6) are those offenses listed in subdivision (c) that are committed against a victim's will and through the use of force and violence.

of the minor victim. (§ 667.61, subd. (c)(3), (5)–(8); Stats. 2010, ch. 219, §§ 4–6, 8–9, pp. 1007–1009, 1011–1015.) Three subdivision (c) offenses (§§ 288, subds. (a), (b), 288.5) already included the age of the minor victim as part of the offense. (See § 667.61, subd. (c)(4),(8), (9).)[13]

The One Strike law is an alternative sentencing scheme applicable "only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to [section 667.61], and is either admitted by the defendant in open court or found to be true by the trier of fact." (Subd. (o); see *People v. Mancebo* (2002) 27 Cal.4th 735, 741–745 (*Mancebo*) [construing former § 667.61].)

### 3. Due Process

" ' "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial." ' [Citation.] This goes for sentence enhancements as well as substantive offenses: A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' " (*People v. Anderson* (2020) 9 Cal.5th 946, 953.)

Defendant acknowledges that he failed to raise this issue below but argues that this is an issue that may be addressed for the first time on appeal despite the lack of any objection by defense counsel at the time of sentencing. The People do not argue that defendant has forfeited this claim. We agree with defendant. (See *People v. Anderson*,

---

**13** Of the subdivision (c) offenses, only spousal rape was not amended to increase punishment depending on the age of the victim. (See §§ 262, subds. (a)(1), (4), 264.1.)

*supra*, 9 Cal.5th at pp. 961–964 [legal error resulting in an unauthorized sentence is not forfeited]; see also *Mancebo*, *supra*, 27 Cal.4th at p. 749, fn. 7.)

### B.     Analysis

The amended information in this case alleged that the offenses in counts 5 through 11 were those included in subdivision (c). It also specifically alleged one circumstance from subdivision (e) that would qualify defendant for sentencing pursuant to subdivision (b), the lower penalty tier of the One Strike law. According to subdivision (b), defendant would be facing a 15-year-to-life sentence if one subdivision (e) circumstance was found true unless subdivisions (j), (*l*), or (m) applied. Subdivision (j), in turn, provides that when the victim is under 14 years old, the punishment is 25 years to life. Counts 5 through 11 charged defendant with lewd acts upon a child under 14 years old (§ 288, subd. (a)) and, therefore, the child's age was expressly pleaded in the information.

The People argue that because the amended information cited to subdivision (b), which specifically refers to subdivision (j), defendant received adequate notice that he could receive the 25-year-to-life sentences he did receive. Our Supreme Court, however, has specifically rejected that argument. (*Vaquera*, *supra*, 15 Cal.5th at pp. 721–722, 724.)

In *Vaquera*, the information's One Strike allegations referred to subdivision (b) and (e)(4) and "suggest[ed] the prosecution was seeking a sentence of 15 years to life based on the multiple victim circumstance." (*Vaquera*, *supra*, 15 Cal.5th at p. 721.) However, "[b]ased on the underlying charges in [*Vaquera*], the prosecution had the choice of: (1) not including a One Strike allegation in the information and seeking a determinate sentence of three, six, or eight years (§ 288, subd. (a)); (2) seeking 15 years to life based on the multiple victim circumstance alone (§ 667.61, subds. (b) & (e)(4)); or (3) seeking 25 years to life based on the additional circumstance that the victim of

11.

count 2 was under the age of 14 (*id.*, subd. (j)(2))." (*Ibid.*) Because the allegations of the information were consistent either with a 15-year-to-life penalty under subdivision (b) or a 25-year-to-life penalty under subdivision (j)(2), an allegation referencing section (b) did not provide sufficient notice to defendant that the prosecutor would seek a 25-year-to-life sentence under subdivision (j)(2). (*Id.* at pp. 721–723.) "Read as a whole, the pleading failed to inform Vaquera of the prosecutor's election to seek the more stringent sentence and did not provide fair notice of his sentencing exposure." (*Id.* at p. 723.)

The information in this case suffers the same deficiencies the Supreme Court found in *Vaquera*.[14] The One Strike allegations as to counts 5 through 11 in this case "did not specify that the prosecution was seeking 25 years to life on that count, cite to subdivision (j)(2), or otherwise make clear that the prosecution was seeking a longer sentence based on the victim's age." (*Vaquera*, *supra*, 15 Cal.5th at p. 725.)

Therefore, we conclude defendant received inadequate notice that upon conviction of these crimes and a true finding of the multiple victim circumstance allegation, he would be sentenced to a term of 25 years to life on each count because his victims were under the age of 14 years.[15] We will vacate the judgment and remand for resentencing.

---

[14] The Supreme Court provided three examples in which fair notice of the prosecution's intent to seek sentencing under subdivision (j)(2) could be provided: (1) the information "could have briefly alleged in the One Strike law allegation the factual circumstances on which it was relying (Vaquera having been convicted in the present case of committing violations of section 288, subdivision (a) against multiple victims and the victim being under the age of 14) and cited to the One Strike law generally (§ 667.61);" (2) the information could have included a citation to subdivision (j)(2) "and referenced the charge in count 2 (§ 288, subd. (a)), an essential element of which is that the victim was under 14 years old) and the multiple victim circumstance (§ 667.61, subd. (e)(4);" or (3 ) the information could have included in the One Strike allegation "that it was seeking 25 years to life on count 2 and alleged the factual circumstances on which it was relying to support that sentence," even without a citation to subdivision (j)(2)." (*Vaquera*, *supra*, 15 Cal.5th at p. 725.)

[15] The People have not argued or attempted to demonstrate that the prosecution provided defendant timely and actual notice that it was seeking a 25-year-to-life sentence by means other than the information. (See *Vaquera*, *supra*, 15 Cal.5th at pp. 727–728; *id.* at p. 727 ["This would be a different case if the prosecution had provided [defendant] timely actual notice that it was

## II.     *Defendant's prison term exceeding his life span does not constitute cruel and unusual punishment under the Eighth Amendment.*

Defendant contends that his 396-year-to-life sentence constitutes cruel and unusual punishment.  He argues that any sentence like his "is an absurdity that serves no legitimate penal purpose" because he would need to serve a term longer than three human life spans to become eligible for parole.  Because defense counsel did not object to the sentence, defendant argues his counsel was prejudicially ineffective.  The People respond that defendant's claim is forfeited and, if not, defendant "is a recidivist and [has] shown himself to be a serious danger to the public."  We conclude defendant's constitutional claim is meritless and thus defense counsel's failure to raise the claim below did not amount to ineffective assistance.

Whether a punishment is cruel and/or unusual is a question of law subject to our independent review.  (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1474.)  As defendant concedes, however, he did not raise this issue in the trial court.  California law is clear that by failing to raise the issue below, he has forfeited the claim.  (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247–1248, and cases therein cited.)

In the alternative, defendant contends defense counsel was ineffective for not moving to reduce his sentence on constitutional grounds.  To prove ineffective assistance, defendant must show that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that, in the absence of counsel's failure, it is reasonably probable that the result of the sentencing proceeding would have been different.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.)

Defendant's ineffective assistance of counsel claim fails because he cannot satisfy the first prong of *Strickland*.  He cannot show defense counsel's performance fell below

---

seeking a 25-year-to-life sentence … and the factual basis on which it was seeking that sentence, despite its failure to [do so] in the information."].)

an objective standard of reasonableness based on defense counsel's failure to raise constitutional claims that had little or no chance at success under the law. (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["[c]ounsel is not required to proffer futile objections"]; see also *Ewing v. California* (2003) 538 U.S. 11, 22 [successful Eighth Amendment challenges to noncapital sentences " 'exceedingly rare' "].) As we discuss below, defendant's Eighth Amendment argument is meritless.

Defendant relies on *Coker v. Georgia* (1977) 433 U.S. 584 (*Coker*), defining a sentence as unconstitutional where it (1) "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering," or (2) is grossly disproportionate to the severity of the crime. (*Id.* at p. 592.) Defendant does not argue that his sentence is disproportionate but rather that it does not contribute to the goals of punishment.

Defendant does not object to his entire sentence as unconstitutional but only to that portion he cannot serve during his lifetime. We do not believe that *Coker*'s first test is intended to address a portion of a prison sentence, objected to only because it extends *beyond* the defendant's life. A punishment is unconstitutional under *Coker*'s first test if it imposes "pain and suffering" that "makes no measurable contribution to acceptable goals of punishment." (*Coker*, *supra*, 433 U.S. at p. 592.) The case *Coker* cited for this test articulated it somewhat differently: "First, the punishment must not involve the unnecessary and wanton infliction of pain." (*Gregg v. Georgia* (1976) 428 U.S. 153, 173 (*Gregg*).) Neither *Coker* nor *Gregg* support defendant's argument that the portion of a sentence he cannot possibly serve imposes pain and suffering, thereby violating the Eighth Amendment's prohibition on cruel and unusual punishment.[16]

---

[16] In framing the first test, *Gregg* reviewed several cases involving actual pain or suffering. (*Gregg*, *supra*, 428 U.S. at p. 173, citing *Wilkerson v. Utah* (1878) 99 U.S. 130, 136 [execution by shooting not cruel and unusual]; *Weems v. United States* (1910) 217 U.S. 349, 367, 381 [sentence of a minimum punishment of 12 years and one day, in chains, at hard and painful labor; the loss of many basic civil rights; and subjection to lifetime surveillance held to be both

*Coker* itself provides no help to defendant as it addressed the death penalty for the crime of rape of an adult woman where the death determination was, under Georgia law, based on prior felonies. (*Coker*, *supra*, 433 U.S. at pp. 586–600 (plur. opn. of White, J.).) *Coker* did not address aggregated sentences that result in or exceed life imprisonment and thus provides no authority for invalidating the sentence in this case. We cannot conclude that a prison sentence that outlasts a defendant's life involves the unnecessary and wanton infliction of pain.

Defendant also relies upon Associate Supreme Court Justice Stanley Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, noting that a sentence exceeding a human life span can serve no rational penological purpose and is inherently cruel and unusual. (See *id*. at pp. 600–601 (conc. opn. of Mosk, J.), citing *Furman v. Georgia* (1972) 408 U.S. 238, 331 (conc. opn. of Marshall, J.).) Justice Mosk's concurring opinion in *Deloza* was not the view of the majority of our Supreme Court and therefore has no controlling weight or precedential value. (*People v. Ceballos* (1974) 12 Cal.3d 470, 483; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383 (*Byrd*).)

Defendant's argument, relying on *Deloza*'s concurrence, has also been rejected by other courts. (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1087–1092 [upholding sentence of 78 years to life even though no eligibility for parole until defendant would be 119 years old]; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222, 1231 [upholding sentence of 135 years to life for 16 felony offenses arising from molestation of four children]; *Byrd*, *supra*, 89 Cal.App.4th at pp. 1375–1376, 1383 [upholding sentence of

---

inhuman and out of proportion to the crime of falsifying an official document]; *Trop v. Dulles* (1958) 356 U.S. 86, 100 (plur. opn. of Warren, C. J.); see *id*. at p. 102 [denaturalization as punishment for desertion cruel and unusual because, while not involving physical mistreatment or primitive torture, "civilized nations of the world are in virtual unanimity that statelessness is not to be imposed as punishment for crime"].)

115 years plus 444 years to life for 12 counts of robbery plus mayhem, and attempted premeditated murder, with personal discharge of firearm, and three priors].)

Furthermore, defendant's sentence actually serves valid penological goals, including vindication of society's sense of justice, protecting society from criminal harms, and deterring criminal behavior. (See *People v. Mesce* (1997) 52 Cal.App.4th 618, 632 [The "classic concerns of sentencing" are "retribution, deterrence, and incapacitation."]; see also *In re Nuñez* (2009) 173 Cal.App.4th 709, 730 ["Valid penological goals include retribution, incapacitation, rehabilitation, and deterrence."]; *People v. Warner* (1978) 20 Cal.3d 678, 689 ["The paramount concern in sentencing must be the protection of society."], superseded by statute on another ground as stated in *People v. Douglas* (1999) 20 Cal.4th 85, 92 fn. 6.)

As defendant seems to acknowledge, his sentence is effectively a sentence of life without the possibility of parole. Considering the number of victims (three children under 10 years old and one child under 14 years old), the repeated abuse, the eight-month period over which the crimes occurred, the gravity and cumulative nature of the crimes, and the likely lifelong impact on the child victims, we conclude defendant's sentence plainly furthers these valid penological goals. (See *In re Nuñez, supra*, 173 Cal.App.4th at p. 730; see also *People v. Meeks* (2004) 123 Cal.App.4th 695, 709 ["… California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses."].)

As the Supreme Court has noted, the One Strike law was enacted to ensure that "serious sexual offenders receive long prison sentences whether or not they have any prior convictions. (Stats. 1993–1994, 1st Ex. Sess., ch. 14, § 1, pp. 8570–8572.) According to a general statement of purpose in the legislative history, the targeted group preys on women and children, cannot be cured of its aberrant impulses, and must be separated from society to prevent reoffense. (Sen. Com. on Judiciary, Analysis of Sen.

Bill No. 26 (1993–1994 1st Ex. Sess.) as introduced Feb. 2, 1994, pp. 9–10.)" (*People v. Wutzke* (2002) 28 Cal.4th 923, 929–930, fn. omitted (*Wutzke*).)

Here, the jury found true allegations under subdivision (e)(4) that qualifying offenses were committed against more than one victim. "[P]ersons convicted of sex crimes against multiple victims within the meaning of section 667.61, subdivision (e)([4]) 'are among the most dangerous' from a legislative standpoint. [Citation.] The One Strike scheme therefore contemplates a separate life term for each victim attacked on each separate occasion." (*Wutzke*, *supra*, 28 Cal.4th at pp. 930–931.)

"The Assembly and Joint Committees heard that mandatory imprisonment is the best means by which to deter and punish the sexual exploitation of children. According to witnesses, such crimes are typically committed by pedophiles who are 'fixated' sexually on children, and who have no interest in sexual partners their own age." (*Wutzke*, *supra*, 28 Cal.4th at p. 936.)

As explained in *Byrd*, "it is immaterial that defendant cannot serve his sentence during his lifetime. In practical effect, he is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life. However, imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel or unusual punishment under either our state Constitution [citation] or the federal Constitution. [Citation.] [¶] Moreover ..., a sentence such as the one imposed in this case serves valid penological purposes: it unmistakably reflects society's condemnation of defendant's conduct and it provides a strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*Byrd*, *supra*, 89 Cal.App.4th at p. 1383.)

Although defendant does not argue disproportionality, we note that sentences exceeding human life expectancy, like defendant's, have been repeatedly upheld against constitutional challenge as proportional. (See, e.g., *People v. Cartwright* (1995)

17.

39 Cal.App.4th 1123, 1132, 1139–1141 [affirming sentence of 375 years to life plus 53 years after engaging in a proportionality analysis]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 666–667 [affirming sentence of 283 years plus eight months after engaging in a proportionality analysis]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 532 [affirming sentence of 129 years after engaging in a proportionality analysis].)

Defendant's acts of molestation affected at least three children while they were under his care and at extremely vulnerable times in their lives, realistically leading to lifelong consequences for them. Furthermore, defendant continued to commit the offenses over an eight-month period. Given this record, the sentence that defendant received furthered acceptable penological goals of retribution, incapacitation, and deterrence and, accordingly, was not excessive. In light of our finding that defendant's claim is meritless and that established precedent has rejected similar constitutional challenges, defendant cannot show defense counsel was ineffective for failing to raise the claim below.

## III. *Assembly Bill 1869 requires that we vacate the unpaid portion of the presentence report fee.*

The trial court imposed a $296 presentence report fee pursuant to former section 1203.1b. That fee recently became "unenforceable and uncollectible" through the enactment of Assembly Bill 1869, effective September 18, 2020, and operative July 1, 2021. The bill added section 1465.9, which states in relevant part: "On and after July 1, 2021, the balance of any court-imposed costs pursuant to … Sections … 1203.1b … as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (a), added by Stats. 2020, ch. 92, § 62, p. 2195.) The parties agree that the fee may not imposed. On resentencing no presentence report fee may be imposed.

## **DISPOSITION**

The judgment is reversed, and the matter is remanded solely for resentencing.

HILL, P. J.

WE CONCUR:

POOCHIGIAN, J.

SMITH, J.